```
            IN THE UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF TEXAS
                    FORT WORTH DIVISION
```

KENNETH J. LEE § 
 §
VS. §
 § CIVIL ACTION NO.4:08-CV-542-Y
ALLIED PILOTS §
ASSOCIATION, ET AL. §

ORDER DENYING PLAINTIFF'S
MOTION FOR PARTIAL-SUMMARY JUDGMENT
AND GRANTING PARTIAL SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS

Pending before the Court is plaintiff Kenneth Lee's Motion for Summary Judgment (doc. #16). After review, the Court concludes that the disability insurance plan at issue is not a "health insurance" plan as contemplated by the Servicemembers Civil Relief Act ("SCRA"). As a result, Lee's motion will be denied. And because resolution of Lee's motion establishes that, as a matter of law, he is not entitled to recover under the SCRA, partial summary judgment will be entered in favor of Defendants.

I.   Background

Lee began his employment with defendant American Airlines ("AA") in April 1985. (Pl.'s App. at 2.) After a one-year probationary period, Lee became a member of defendant Allied Pilots Association ("APA"). (*Id.*) APA is the administrator of the Allied Pilots Association Disability Income Plan (Loss of License) ("the Plan"). (*Id.* at 75.)

Lee applied for the Plan and was enrolled effective April 1, 2000. (*Id.*) In January 2004, Lee, a United States Marine Corps reservist, was called to active duty in Iraq. (*Id.* at 2.) Lee remained on active duty until May 21, 2005. (*Id.* at 4.) Under the terms of the Plan, a participant's coverage ceases upon the earliest of certain specified events. (*Id.* at 45.) As relevant to

this case, the Plan provides that coverage ceases "twelve (12) months after the date [a participating pilot] takes a military leave of absence." (*Id.*) On January 13, 2005, Lee's Plan coverage was terminated under this provision. (*Id.* at 76-77.) Upon returning from active duty, Lee applied for reinstatement to the Plan. (*Id.* at 77-78.) Lee was instead re-enrolled in the Plan with an effective enrollment date of August 1, 2005. (*Id.* at 78.)

The policy also excludes from coverage a claim based on a disability arising within six months of the plan's effective date unless the injury giving rise to the disability occurs after the effective date ("six-month exclusion"). (*Id.* at 32-33; Def. App. at 3, 33.) In March 2000, Lee was diagnosed with Type II diabetes. (Def.'s App. at 35, 38.) By August 22, 2005, Lee's diabetes had worsened, and he was disqualified from obtaining the Federal Aviation Administration medical certificate necessary to maintain his pilot's license. (*Id.* at 78.)

As a result of this disqualification, Lee applied for disability benefits under the Plan. (Pl.'s App. at 78.) Because Lee's diabetes pre-existed his effective date and worsened to the point of a disability within six months after his effective date, Lee's application was denied. (*Id.* at 78; Def.'s App. at 33-34.) Lee appealed the denial to APA's benefits review and appeal board, which also denied his claim. (Pl.'s App. at 9-33.)

According to Lee, under the SCRA he was entitled to reinstatement rather than re-enrollment upon his return from active duty. Lee insists that reinstatement would leave his original effective date of enrollment of April 1, 2000 in place. If Lee's effective date were April 1, 2000, rather than August 1, 2005, the

onset of his disability--August 22, 2005--would be well outside of the six months following his effective date and he would not be subject to the six-month exclusion.

Defendants counter that the Plan is not covered by the SCRA. The SCRA entitles a military servicemember, under certain conditions, to reinstatement of "health insurance" upon returning from active duty and application to his employer.[1] Defendants insist that health insurance is limited to payments and reimbursement for medical care. The Plan, Defendants contend, is meant only to compensate for lost income. As the introductory portion of the Plan's governing document explains:

> Income protection during periods of long term pilot disability is a vitally important issue for all of us. Recognizing that need, the Allied Pilots Association has developed a voluntary plan for its members that is specially designed to provide financial assistance when a long term Disability prevents a Plan Participant from performing the duties as a pilot for the Company.

(Def.'s App. at 9.) Defendant argue that because the Plan is not health insurance, the SCRA does not apply to Lee's case.

---

[1] The SCRA provides that:

A servicemember who, by reason of military service as defined in section 703(a)(1) [50 U.S.C. App. § 593(a)(1)], is entitled to the rights and protections of this Act shall also be entitled upon termination or release from such service to reinstatement of any health insurance that--

    (1)    was in effect on the day before such service commenced; and

    (2)    was terminated effective on a date during the period of such service.

50 U.S.C. App. § 594(a). There appears to be no dispute that Lee meets both of these requirements.

II. Discussion

    A.    Legal Standards

        1.    Summary-Judgment Standard

When the record establishes "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law," summary judgment is appropriate. FED. R. CIV. P. 56(c). An issue is considered "genuine" if "it is real and substantial as opposed to merely formal, pretended, or a sham." *Bazan v. Hidalgo County.*, 246 F.3d 481, 489 (5th Cir. 2001). Facts are considered "material" if they "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether there are any genuine issues of material fact, the Court must first consult the applicable substantive law to ascertain what factual issues are material. *Lavespere v. Niagra Mach. & Tool Works*, 910 F.2d 167, 178 (5th Cir. 1990). Next, the Court must review the evidence on those issues, viewing the facts in the light most favorable to the nonmoving party. *Id.; Newell v. Oxford Mgmt. Inc.*, 912 F.2d 793, 795 (5th Cir. 1990).

In making its determination on the motion, the Court must look at the full record including the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits. *See* FED. R. CIV. P. 56(c); *Williams v. Adams*, 836 F.2d 958, 961 (5th Cir. 1988). Rule 56, however, "does not impose on the district court a duty to sift through the record in search of evidence to support" a party's motion for, or opposition to, summary judgment. *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992). Thus, parties should "identify specific evidence in the record, and . . .

articulate" precisely how that evidence supports their claims. *Forsyth v. Barr*, 19 F.3d 1527, 1536 (5th Cir. 1994). Further, the court's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249.

To prevail on a summary-judgment motion, the moving party has the initial burden of demonstrating that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law. *Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986). When the moving party bears the burden of proof on the claim for which it is moving for summary judgment, it must produce evidence establishing "beyond peradventure all of the essential elements of the claim or defense to warrant judgment in [its] favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190,1194 (5th Cir. 1986). Such a movant's showing must be such that the court can conclude that no reasonable trier of fact could find other than for the movant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("[S]ummary judgment will not lie . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.").

When the movant has carried its summary-judgment burden, the respondent must go beyond the pleadings and by his own evidence set forth specific facts showing there is a genuine issue for trial. *Arbaugh v. Y&H Corp.*, 380 F.3d 219, 222 (5th Cir. 2004) (citing *Celotex*, 477 U.S. at 324); *see also* Fed. R. Civ. P. 56(e). This burden is not satisfied by creating some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). If the evidence is

merely colorable or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249-50.

B.  Analysis

Lee argues that had he been reinstated as required by the SCRA, the inception of his coverage under the Plan would have reverted back to its original date--April 1, 2000. Rather than reinstate him in accordance with the SCRA, Lee argues, Defendants re-enrolled him after his military service ended, giving him a new effective date of August 1, 2005. As a result, when Lee's diabetes condition became a disability in August 2005, it was excluded from coverage under the six-month exclusion.

Lee concedes that his SCRA claim turns on whether the Plan provides health insurance as contemplated by the SCRA. (Pltf. Br. at 10.) Defendants argue that health insurance consists of payments for, or payments to reimburse expenses for, medical care and that the Plan provides only income replacement in the event of a disability. Thus, Defendants argue that the Plan does not provide health insurance as contemplated by the SCRA.

Were the term "health insurance" defined in the SCRA, the Court would be bound to apply such definition. *Stenberg v. Carhart*, 530 U.S. 914, 942 (2000). The SCRA does not, however, define health insurance. *Cf.* 50 U.S.C. App. § 511 (defining terms for the purposes of the SCRA). Without a statutory definition the Court must otherwise ascertain what Congress intended in using the term. *See Watson v. United States*, 552 U.S. 74, 128 S. Ct. 579, 583 (2007) ("With no statutory definition . . . the meaning of [a

term] has to turn on the language as we normally speak it . . . .")
(citations omitted).

An issue of statutory construction, such as the one presented by the parties, is a question of law for the Court to decide. *Chandris, Inc. v. Latsis*, 515 U.S. 347, 369 (1995). Of course, "in any case of statutory construction, [the] analysis begins with the language of the statute. And where the statutory language provides a clear answer, it ends there as well." *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999); *see also Engine Mfrs. Assn. v. South Coast Air Quality Management Dist.*, 541 U.S. 246, 252, 124 S. Ct. 1756, 158 L. Ed. 2d 529 (2004) ("Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose") (internal quotation marks omitted).

In interpreting a statutory provision, it is helpful to look to the meaning that has been given to similar provisions in other statutes. *See Carcieri v. Salazar*, 129 S. Ct. 1058, 1064 (2009) (looking to the interpretation and use of the word "now" in other statutes to determine its meaning within the Indian Reorganization Act); *Flowers v. S. Reg'l Physician Servs.*, 247 F.3d 229, 233 n.4 (5th Cir. 2001). Defendants note that the Internal Revenue Code, the Employee Retirement Income Security Act ("ERISA"), and the Health Insurance Portability and Accountability Act ("HIPAA"), all define health insurance as "benefits consisting of medical care." 26 U.S.C. § 9832(b)(1)(A); 29 U.S.C. § 1191b(b)(1); 42 U.S.C. § 300gg-91(b)(1). Thus, in using the term health insurance, Congress has consistently tied the term to medical care. Lee has not pointed to one example of Congress's defining health insurance

7

in such a way as to include income replacement in the form of a disability insurance.

Both sides point the Court to dictionary definitions of the term health insurance. Under some circumstances, it is appropriate for a court to consult the dictionary definition of language used by Congress in evaluating Congress's intent. *See*, *e.g.*, *Engine Mfrs. Assn.*, 541 U.S. at 252-53. Lee points to various lay dictionary definitions in support of his argument. The broadest of these comes from the 1968 edition of the *World Book Dictionary*, which defines health insurance as "insurance that covers doctor's bills, medical expenses, and loss of income due to illness, etc." Lee also discusses definitions from medical and insurance-industry dictionaries, which define health insurance as including income replacement in the event of disability.

The term health insurance has, however, taken on a legal meaning, making resort to lay dictionaries irrelevant. As noted by Defendants, health insurance is defined in several statutes and regulations and its meaning has been addressed in several cases. *See* 26 U.S.C. § 9832(b)(1)(A) (Internal Revenue Code definition of health insurance); 29 U.S.C. § 1191b(b)(1) (same as to Employee Retirement Income Security Act ("ERISA")); 42 U.S.C. § 300gg-91(b)(1) (same as to Health Insurance Portability and Accountability Act ("HIPAA")); 29 C.F.R. § 2590.701-2 (same as to regulations implementing the Consolidated Budget Reconciliation Act ("COBRA")); *also see*, *e.g.*, *Austell v. Raymond James & Assoc., Inc.*, 120 F.3d 32, 34 (4th Cir. 1997) (concluding that disability insurance, which is designed to replace lost wages, is not health insurance as defined by the Internal Revenue Code). And the

Court's job here is to ascertain the legal meaning of the term health insurance, not what that term means within the medical or insurance industry.

Where Congress uses a term that has accumulated a legal meaning, it is presumed to know and adopt such meaning. *Morissette v. United States*, 342 U.S. 246, 263 (1952). When Congress enacted the SCRA, each of the above-listed statutory definitions of health insurance was in place. *See* Pub. L. No. 108-189, 117 Stat. 2864 (December 19, 2003 enactment of the SCRA); 104 Pub. L. No. 191, 110 Stat. 1936 (August 21, 1996 enactment of HIPAA and amendment to ERISA and the Internal Revenue Code). And Defendants point to Black's Law Dictionary in support of their argument that health insurance has taken on an accepted legal meaning that entails payment or repayment for medical expenses. Black's defines health insurance as "insurance covering medical expenses resulting from sickness or injury." BLACK'S LAW DICTIONARY 805 (7th ed. 1999). Given Congress's consistent definition of the term health insurance and its enactment of the SCRA after that term had developed an accepted legal meaning as a result of such definitions, the Court concludes that the term and, therefore, the SCRA, does not cover a disability-insurance plan.

Lee argues that the United States Supreme Court has interpreted health insurance as including the sort of disability insurance at issue in this case. In *Haynes v. United States*, the Court dealt with the question of whether payments to an employee under an employer's disability-insurance plan were exempt from taxation. *Haynes v. United States*, 353 U.S. 81 (1957). Under the 1939 Internal Revenue Code "amounts received through accident or

9

health insurance . . . as compensation for personal injuries or sickness" were exempted from taxable income. *Id.* at 83 (quoting former 26 U.S.C. § 22(b)(5)). The Court concluded that the disability payments at issue qualified for the health-insurance exemption, defining health insurance as "an undertaking by one person for reasons satisfactory to him to indemnify another for losses caused by illness." *Id.*

But as argued by Defendants, and as noted by the Court in *Haynes*, the 1939 Internal Revenue Code provided no definition of the term health insurance. *Id.* at 85. Nor had there been a "uniform administrative practice" regarding the meaning of health insurance for the Court to draw upon. *Id.* It was "[u]nder these circumstances" that the Supreme Court gave health insurance a "broad general meaning." *Id.* Congress has amended the Internal Revenue Code to define health insurance. *See* 26 U.S.C. § 9832(b)(1)(A). In fact, disability-insurance plans are specifically exempted from this definition. *See* 26 U.S.C. § 9832(c)(1)(A). Congress, which is presumed to be aware of judicial interpretations of the statutes it enacts, thus has displaced the Supreme Court's definition of health insurance in *Haynes* with its own. *See Lamie v. United States Tr.*, 540 U.S. 526, 534 (2004) ("The starting point in discerning congressional intent is the existing statutory text and not the predecessor statutes.") (citation omitted); *Cf. Lorillard v. Pons*, 434 U.S. 575, 580 (1978) ("Congress is presumed to be aware of [a] judicial interpretation of a statute and to adopt that interpretation when it re-enacts [the] statute without change."). Consequently, Lee's reliance on

10

the Supreme Court's discussion of the meaning of health insurance in *Haynes* is misplaced and unpersuasive.

Lee argues that health insurance should be read to include disability-insurance plans because the Supreme Court has stated that the SCRA must be liberally construed in favor of servicemembers. *See Boone v. Lightner*, 319 U.S. 561, 575 (1943) (stating that the SCRA's predecessor was to be "liberally construed"). But before a court may engage in liberal construction of a statute in favor of those the statute was meant to benefit there must be an ambiguity that requires resolution. *See Negonsott v. Samuels*, 507 U.S. 99, 110 (1993) (refusing to interpret a term within the Kansas Act, 18 U.S.C. § 3243, liberally in favor of Native Americans because the term at issue was unambiguous). A court only applies canons of statutory construction as necessary to resolve an ambiguity. *See Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002). The fact that the term health insurance is not defined by the SCRA does not create an ambiguity. The preceding discussion demonstrates that Congress has been consistent and clear regarding the meaning of the term health insurance.

III. Conclusion

Accordingly, Lee's motion for partial summary judgment is DENIED. In their response, Defendants argue that not only is Lee not entitled to summary judgment on his SCRA claim, but that it is apparent from Lee's motion that, as matter of law, he cannot recover under the SCRA. Defendants argue that, as a result, the Court should enter summary judgment in their favor despite the fact that they have not filed their own motion. Because the Court

agrees that Lee's motion and the foregoing analysis establish that, as a matter of law, Lee cannot recover under the SCRA, summary judgment on Lee's SCRA claim is GRANTED in favor of Defendants. *See Robinson v. Aetna Life Ins. Co.*, 443 F.3d 389, 398 (5th Cir. 2006) (noting that summary judgment may be entered in favor of a party that did not move for summary judgment where "(1) there is no genuine issue of material fact and (2) the opposing party has had a full opportunity to (a) brief the legal issues and (b) develop a record)).

    SIGNED July 14, 2009.

                                                TERRY R. MEANS
                                                UNITED STATES DISTRICT JUDGE